Mayberry v. Michael A. Dittmann Ms. Tone. Yes. May it please the court. My name is Hope Tone. I'm a third-year law student at the University of Notre Dame, and under the supervision of Mr. Robert Palmer, I represent the appellant, Mr. Charles Mayberry, on his appeal. The district court issued Mr. Mayberry a certificate of appealability on two issues, the issue of equitable tolling and on the merits of his decision. The district court erred in dismissing Mr. Mayberry's petition as untimely filed for two reasons. First, Mr. Mayberry is entitled to the application of equitable tolling. And second, in the alternative, Mr. Mayberry is entitled to an evidentiary hearing to show that his mental incompetency did, in fact, rise to the level of an extraordinary circumstance. First, Mr. Mayberry. Ms. Tone, hello. As Judge Grab pointed out, Mr. Mayberry was able to take legal action during the limitations period. He filed the motion for a new trial in state court and the premature habeas petition in federal court. So how do we conclude that there was an extraordinary circumstance preventing him from preserving his claims in a timely manner during that very same period of time? Yes, Your Honor, Mr. Mayberry did file those documents with both the state and federal court. However, first, they were drafted by other prisoners on Mr. Mayberry's behalf. And second, Mr. Mayberry's diligence does not necessarily equate to his competence and his competency to pursue his rights on his own. First, Mr. Mayberry pursued his rights diligently throughout the one-year statute of limitations period and beyond. Under Holland v. Florida, Mr. Mayberry must only show reasonable diligence and not maximum feasible diligence. Further, in both Moore v. Knight and Ryan v. the United States, this court held that courts can consider the realities of prison confinement when evaluating the reasonable diligence prong of this test. Mr. Mayberry was housed in the psychiatric unit of the prison, which made it difficult for him to access the assistance of other inmates when drafting his documents to the court as well as reading any sorts of correspondence with the court. Mr. Mayberry showed his diligence throughout the one-year limitations period by securing assistance to help him draft an appeal for his initial conviction, a motion for a new trial in the state of Wisconsin, a letter to the state court about his post-conviction relief, and finally his unexhausted habeas petition, all before the one-year statute of limitations period had run. Further, this court has not conclusively held that periods of inaction during the one-year limitations period foreclose the application of equitable tolling. In Carpenter v. Duma, the petitioner waited 21 months to file his exhausted habeas petition in the federal court despite explicit instructions from the district court to do so. In contrast, Mr. Mayberry took only six months to refile his petition in the state court to begin the exhaustion process. Further, when the district court dismissed Mr. Mayberry's initial unexhausted habeas petition, they offered no explicit warning that his statute of limitations was about to run or that he should be aware of how little time was left. Further, Mr. Mayberry's mental incompetency in 2012-2013 was in fact an extraordinary circumstance that stood in the way of him timely filing his habeas petition. In Davis v. Humphreys, this court recognized that mental incompetency can, in fact, rise to the level of an extraordinary circumstance. However, this court... But as we sit here, we don't really know, do we, how serious Mr. Mayberry's mental illness is nor how it may have affected him during the one-year limitations period, do we? Yes, Your Honor. We have no explicit evidence of his mental incompetency from the years of 2012-2013. However, we do have his 1999 medical report that classified him as a person with mild mental retardation and noted that he was suffering the effects of a car accident that had left him in a coma for somewhere between a week and a month. The car accident was in the 1980s and Mr. Mayberry was evaluated in 1999. And in that medical evaluation, the doctor indicated that there was no indication that these deficits are acute or subject to change over time. So Mr. Mayberry also offered for evidence the fact that in 1999 he was adjudicated incompetent to stand trial and his 2015 prison transcript, which denotes him as a prisoner with serious mental illness. Ms. Tone, if we were to reach the merits of this case, we've got the 1999 finding, but we have later findings that he was competent to stand trial closer in time to the challenge conviction and trial here, where you're attacking on the merits, the effective assistance of counsel. What was unreasonable about the state court's rejection of the claim on the merits? Yes, Your Honor. Mr. Mayberry, although he had been later adjudicated competent to stand trial after his 1999 conviction, it was unreasonable of his trial on appellate counsel to not raise his mental competency because he had in the past been found incompetent to stand trial. So merely the fact that he was found incompetent and then found competent wasn't conclusive proof that he was competent to stand trial for this underlying conviction. I'm sorry. Go ahead. Well, maybe they could have raised the issue, but if he's competent to stand trial, there's no prejudice from the failure to raise it. But on the merits here, don't we have to apply ad pediferance? And as long as the state court's decision on the merits is reasonable, we need to uphold it. So what's unreasonable about the state court determination on the merits if we get there? Yes, Your Honor. If we reach the merits of this decision, it was unreasonable of the state court because there was sufficient evidence that Mr. Mayberry was incompetent at this time. Okay. Was incompetent at the time of this trial? Of his conviction of the underlying habeas petition. Which was in when? Remind me. 2008, I believe, Your Honor. Okay. Well, he was convicted in 2009. Is that the same case? Right. Yes, Your Honor. But had been found competent to stand trial in Dane County criminal cases in 2000 and 2004, right? Yes, Your Honor. So why is it unreasonable to say, given that history, there's really nothing to do here? Your Honor, we argue that it was unreasonable of the state court in this situation because Mr. Mayberry has a documented history of mental incompetency that dated far back beyond the one 1999 adjudication of mental incompetency. Thank you. Second, in the alternative, we request Mr. Mayberry have an evidentiary hearing to prove that his mental incompetency did, in fact, rise to the level of an extraordinary circumstance. His competency was never raised in a 2008 trial, right? No, Your Honor. Is it true that he can neither read nor write? Yes, Your Honor. Mr. Mayberry contends that he is illiterate. So in the alternative, we request Mr. Mayberry have an evidentiary hearing to show that his mental incompetency did, in fact, rise to the level of an extraordinary circumstance. Under Sandoval, Mr. Mayberry just needs to allege facts that, if proven, would entitle him to relief. Mr. Mayberry has provided sufficient evidence, including his 1999 medical report, the fact that he was found incompetent to stand trial, and the 2015 prison transcript to show that these are not mere conclusory allegations and that he is, in fact, entitled to an evidentiary hearing on this issue. And if Your Honors have no further questions, I'd like to reserve the rest of my time for rebuttal. Fine. Thank you, Counsel. Thank you. Ms. Sah? May it please the Court, Soap and Shaw for the State of Wisconsin. I'll begin by discussing why Mayberry fails to make the required showing on either prong of the Holland two-step test for equitable tolling, and then I would like to briefly touch on the evidentiary hearing issue. Judge Crabb did not abuse her discretion in determining that Mayberry's alleged incompetence did not rise to the level of an extraordinary circumstance and that he did not exercise reasonable diligence during the limitations period. In order for mental incompetence to qualify as an extraordinary circumstance, it must have resulted in the petitioner's untimely filing, and this Court has made clear that the causation requirement is strict. In fact, in Davis, this Court said that something more than but-for causation is essential. The mental illness or incompetency must, in fact, prevent the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them. Here, we know that Mayberry was able to act upon his legal rights during the tolling period because he filed other documents during that time, and as in this Court's Foster case, Mayberry offers no explanation why he was able to file in those other cases but not this one. Is there nothing in the record other than Dr. Birney's report that sheds light on the nature and extent of Mr. Mayberry's mental illness? I believe that's correct, Your Honor. We do have the few-word notation from the 2014 prison record that says serious mental illness and in parentheses diagnostic, but as Your Honor suggested, that notation doesn't provide any further detail on the nature of Mr. Mayberry's alleged mental incompetence. Are you contesting the fact, for instance, that he cannot read or write? I don't believe the State contests that Mr. Mayberry can read or can write. Even, however, assuming that he is illiterate, this Court has previously said that illiteracy and inability to cope with matters legal, those characteristics do not rise to the level of extraordinary circumstances. Some of those circumstances are nothing more than the garden variety claims that many prisoners have. And in addition, Mayberry did not clearly show that he exercised reasonable diligence throughout the entire one-year period. And many courts, including this circuit, have stated that multiple months-long periods of delay indicate that a petitioner did not exercise reasonable diligence throughout the entire one-year tolling period. Ms. Shaw, in this case, Mr. Mayberry did manage to file a premature federal habeas petition, right? That's correct. He did manage to file that. And in that situation, a district judge has the discretion simply to stay the petition, correct? That's right. The district judge does have that choice. And if that had happened here, we wouldn't have any timeliness issue at all, would we? That's correct, Your Honor. Perhaps you could address the merits of the underlying claim for ineffective assistance of counsel. Sure. So the State agrees with Judge Crabb here that Mayberry is unlikely to prevail on the merits of his ineffective assistance of counsel claim, given that in 2008, when he stood trial, nothing would have given counsel, quote-unquote, reason to doubt his competence at that time. And given that the Wisconsin Court of Appeals… Well, the argument from the other side is not that there was nothing, but rather there was the 1999 finding of incompetence, right? Your Honor, the operative time period for evaluating counsel's actions under the Burge case in Wisconsin, and I believe a case from this court, is the time of trial that a previous finding of incompetence does not necessarily mean that a defendant 10 years later… No, not necessarily. That's correct. The argument on the petitioner's side, as I understand it, is that that should have been enough of a signal that effective counsel would have looked into the matter of his competence. So, tell us about what the state courts did on the merits of this issue, please. So, the Wisconsin Court of Appeals examined that 1999 report and stated that it was not sufficient to give counsel reason to doubt. Was there a trial court evidentiary hearing on the matter? There was an evidentiary hearing held on September 9th of 2013, and the circuit court asked Mr. Mayberry if he was willing to waive his privilege. And I believe his trial counsel was present at this evidentiary hearing and ready to give testimony. But based on the lack of waiver of privilege and the minimal pleading, the circuit court determined that Mayberry would not prevail on his defense. There were subsequent trials after that 1999 case, right? That's correct. So, in 2000 and… So, initially that 1999 finding of incompetence to stand trial was superseded in that same case, I believe in 2000, in September. Same fact, same case, but he's competent to stand trial in that one. Yes, Mayberry is found competent in 2000 to stand trial. And then later on, also in the year 2000, in a separate case, Mayberry was found competent to stand trial. In 2003, I believe in another matter, he did not contest his competence, and based on the fact that there was a conviction that he was competent. And then, again, in 2004, he contested his competence, and the court determined that he was, in fact, competent to stand trial. And I would just like to comment on the… Well, those were issues raised and found competent to stand trial. In 2004? In 2004. Yes, Your Honor. On the evidentiary hearing that Mayberry, when represented by counsel in the district court, did not request an evidentiary hearing on the equitable tolling issue. And he now asks this court for another bite of the apple to supplement the record, but still does not indicate what evidence, if any, would support his allegation that his mental incompetence prevented him from filing a timely petition. And this court has specifically said that unsupported speculation raised for the first time on appeal is not a basis to remand. And Mayberry has been litigating his competence for years, but has only ever been able to produce those same two pieces of evidence, that 1999 report and this 2014 prison notation. Reversing Judge Crabb's decision here, under an abuse of discretion standard, would be a waste of judicial resources and effectively nullify a district court's ability to dismiss a petition without a hearing. If Your Honor has no further questions, the State will rest. Mr. Rubin or anything? Thank you very much, Counsel. Thank you. Ms. Toh? Your Honor, on rebuttal. First, Mr. Mayberry, the fact that he was found incompetent to stand trial in 1999 and later competent is not dispositive of his competency in 2008. And there were enough red flags that we contend that his trial in appellate counsels should have investigated his competency to stand trial in the underlying decision in this case. Second, Mr. Mayberry requests an evidentiary hearing because in the 2014 prison transcript, he was denoted as a prisoner with serious mental illness. It would be surprising if there was no evidence in his prison medical files that explained or didn't explain why he was denoted as a prisoner with serious mental illness and why he was housed in the psychiatric unit of the prison. So there is sufficient evidence that these aren't just conclusory statements and that there would be evidence to find in this specific situation. Finally, in SOCIA, this court held that the petitioner must be – they must consider the entire hand that the petitioner was dealt. And here, Mr. Mayberry was not merely illiterate. Mr. Mayberry was illiterate and mentally incompetent, and these factors rose to the level of an extraordinary circumstance, which should warrant the application of equitable towing to Mr. Mayberry's case. Thank you. Thank you. Thank you for appearing before us, Ms. Tohn, and thank you, Counsel, for being with us. Thank you very much.